## PEOPLE *v*. BURNS.

1. EMBEZZLEMENT—PROBATION OFFICER IS COUNTY OFFICER—GUILTY OF STATUTORY EMBEZZLEMENT.

    A probation officer of the mothers' pension division of the probate court is an officer of the county, and although he was not required by law to handle any of the county's money, where he did receive money as such probation officer and appropriated it to his own use he was guilty of embezzlement under 3 Comp. Laws 1915, § 15308; whether he was legally authorized to handle and disburse the money not being controlling.

2. CRIMINAL LAW—VENUE—RIGHT TO BE TRIED IN COUNTY WHERE ALLEGED OFFENSE COMMITTED.

    The right of an accused to be tried in the county where the offense is alleged to have been committed is a valuable right, of which he should not be deprived except upon a clear showing of good cause.

3. SAME—ATTEMPT TO SECURE FAIR JURY SHOULD BE MADE—SHOWING BY AFFIDAVITS NOT BEST METHOD.

    To determine whether a motion for a change of venue should be granted, the better practice would be for the trial court to make an actual test by an effort to secure a fair jury, rather than to determine it upon evidence by affidavits.

4. SAME—CHANGE OF VENUE WITHIN DISCRETION OF COURT—REVIEW.

    The question of a change of venue is addressed to the judicial discretion of the trial judge, and except for an abuse of that discretion the Supreme Court has no right to review his ruling.

5. SAME—ABUSE OF DISCRETION.

    Granting a change of venue upon affidavits filed by the prosecuting attorney in support of his contention that the people could not have a fair trial in the county of a county officer charged with embezzlement, *held*, not an

---

[1]Embezzlement, 20 C. J. § 43; [2]Criminal Law, 16 C. J. § 303; [3]Id., 16 C. J. § 323; [4]Id., 16 C. J. § 306; 17 C. J. § 3577; [5]Id., 16 C. J. § 325; 27 R. C. L. 827; 6 R. C. L. Supp. 1671; 7 R. C. L. Supp. 958.

abuse of discretion, although counter affidavits filed by defendant supported his contention that a fair trial could be had.

Exceptions before judgment from Bay; Houghton (Samuel G.), J. Submitted January 12, 1928. (Docket No. 124.)    Decided April 3, 1928.

Samuel J. Burns was convicted of embezzlement. Affirmed.

*W. J. Nash* (*Collins & Thompson*, of counsel), for appellant.

*William W. Potter*, Attorney General, *Hugo E. Braun*, Prosecuting Attorney, and *Stanley F. Quinn*, Assistant Prosecuting Attorney, for the people.

McDonald, J.    The defendant was convicted under an information charging him with the embezzlement of $20 represented by a warrant of the treasurer of the county of Saginaw issued to one Anna Anderson. The information contained five counts.   On the trial the third, fourth, and fifth counts were stricken out, and the case was submitted to the jury on the first and second.    The jury found the defendant guilty on the first count, and not guilty on the second.    The first count was charged under section 15308, 3 Comp. Laws 1915, which reads as follows:

"If any officer, clerk, or other person, employed in the treasury of this State, or in the treasury of any county, or in any other public office within the State, shall commit any fraud or embezzlement therein, he shall be punished," etc.

At the time of the alleged embezzlement, the defendant was probation officer of the mothers' pension division of the probate court of Saginaw county, Michigan.    On June 3, 1925, he received a warrant from the treasurer of Saginaw county payable to the order

of Anna Anderson, who was on the mothers' pension
list.    It is charged that he did not deliver the war-
rant to Mrs. Anderson, but forged her name thereto,
cashed it, and appropriated the money to his own use.
Before the trial, the prosecuting attorney filed a motion
for a change of venue, alleging that the people could
not have a fair trial in the county of Saginaw.    The
motion was supported by numerous affidavits and was
contested by the defendant, who filed a large number
of affidavits in opposition thereto.    The motion was
granted, and the case was transferred for trial to
Bay county.    It is here on exceptions before sentence.

The first question presented by the record is that
the conviction cannot be sustained under section 15308,
3 Comp. Laws 1915, on which the first count of the
information is based.    It is claimed by the defendant
that this statute was not intended to cover a case like
the one at bar, for the reason that, as probation officer,
no duty was imposed on him to receive, pay out or
account for the safekeeping of any money belonging
to the county of Saginaw; that the money which he
is charged with having embezzled did not come into
his possession by virtue of his office or employment,
and, therefore, he could not be guilty of embezzlement
under the statute on which the information is based.

It is charged in the information that the defendant
was "an officer, clerk and personally employed by the
county of Saginaw," and that he embezzled certain
money that came into his possession and control "by
virtue of his said office and employment."    The
statute applies to any officer, clerk, or other person
employed in any public office who "shall commit any
fraud or embezzlement therein."    The defendant was
an officer of the county of Saginaw.    The question is,
Did he commit an embezzlement in that office?    It is
true that the law did not require him to handle any
of the county's money.    The warrants for payments

to mothers pensioners were issued by the county clerk on order from the probate judge. The clerk passed them over to the county treasurer, who signed them and mailed them to the pensioners. This method of payment was not always followed. In many instances, the treasurer gave the warrants to the defendant, who personally delivered them to the pensioners. This practice followed a suggestion of the probate judge, who testified:

"I acquainted Mr. Burns with the usual procedure; I have no recollection of giving any specific instructions in regard to his duties concerning any checks excepting at the beginning of his appointment we talked over the matter of how to best get acquainted with the recipients of this fund, and I suggested to Mr. Burns that it would be advisable at that time to call in all pensioners for an interview with them at the time that the check was given to them."

Acting on this suggestion, the defendant received from the county treasurer every month a number of mothers' pension checks. The deputy treasurer testified:

"He came where the pile was and took them in my presence and took them away. Sometimes he would take 5, and he has taken as high as 20 or 25."

In this way he came into possession of the check, the proceeds of which he is alleged to have embezzled.

It is said by counsel for the defendant that the law never contemplated that probation officers should receive checks and deliver them to mothers pensioners. Conceding the correctness of counsel's contention, the fact remains that he did receive checks and did so as probation officer. Whether he was legally authorized to handle and disburse this money is not controlling. He consented to handle it as probation officer, and, if he has embezzled it, he is in no position to say that he had no legal right to its possession. It will be noted that the statute does not say that the

money must have come into his hands by virtue of his office.     It merely provides for the punishment of any officer, clerk, or other person employed in any public office who "shall commit any fraud or embezzlement therein."

But the defendant received these checks by virtue of his office.     They were delivered to him because he was the probation officer, and he consented to receive them and disburse the money because it brought him in contact with the pensioners whose claims he was required to investigate.     The money belonged to the county of Saginaw.     While in possession of it as probation officer he appropriated some of it to his own use.     He committed an embezzlement in his office, and that is all the statute requires to constitute the offense charged.

The record presents but one other question for our consideration.     Did the court err in granting the prosecuting attorney's motion for a change of venue? It appears from the affidavits filed by the prosecuting attorney that, at the time the motion for a change of venue was made, there were 14 criminal cases pending against the defendant in the county of Saginaw; that the Saginaw News Courier, a daily newspaper having a large circulation in Saginaw county, carried articles, statements, and headlines regarding these cases and published portions of the testimony taken in justice's court examinations; that because of the publication of these articles and statements, public interest and public prejudice were greatly aroused; that many persons were strongly influenced thereby, and became ardent partisans of the defendant; that the defendant had held public office in the county of Saginaw for many years, and was widely known; that in the campaign of 1926 he was a successful candidate for county clerk against Edward P. Roeser, the former clerk; that during the campaign a bitter personal and political feud arose

between the two candidates; that a great many persons are intensely loyal to the defendant, have absolute confidence in him, and have a prejudice against Roeser and hatred for him; that numerous persons have said that defendant Burns will not be convicted unless Roeser is also convicted; that the defendant became county clerk of Saginaw county on January 1, 1927, and as such had charge of the jury lists furnished by the jury commission; that, in order that a fair and impartial trial of the cases against him might not be had by the people, he withdrew from 47 of the 48 envelopes containing the jury lists names of jurors furnished by the commission, and substituted therefor names of his own selection. For these reasons it was urged that the people could not have a fair trial in the county of Saginaw.

In opposition to the motion, the defendant filed his affidavit, in which he denied tampering with the jury lists, and requested the court to designate one of his deputies or some other suitable person to become custodian of the jury lists and to take charge of drawing the juries. He denied that the publication of articles in the daily newspaper concerning the cases against him had created public sentiment in his favor, or that there was a bitter personal and political feud between him and Mr. Roeser, the former clerk. He also filed numerous supporting affidavits from reputable citizens who gave their opinion that the people could obtain a fair trial in Saginaw county.

The right of an accused to be tried in the county where the offense is alleged to have been committed is a valuable right of which he should not be deprived except upon a clear showing of good cause. To determine a question of such importance upon evidence by affidavits is never satisfactory. A better practice would be for the trial court to make an actual test by an effort to secure a fair jury. Such a course is not

absolutely essential, but it is the surest way of protecting the rights of both parties. However, the question is addressed to the judicial discretion of the trial judge, and except for an abuse of that discretion we have no right to review his ruling.

In *People* v. *Swift,* 172 Mich. 473, it was said:

"It is, however, now recognized that where rulings on such motions are a clear abuse of discretion, manifestly subversive of justice, they may be reviewed and corrected on writ of error."

In that case it was also said:

"It is difficult, and often impossible, for appellate courts to see matters as they actually existed and appeared on the trial to the presiding judge, and that should not be overlooked in passing upon a question of the proper exercise of discretion."

In view of the showing made, we would not be justified in holding that, in granting the motion for a change of venue, the trial court abused its discretion.

The judgment of conviction is affirmed, and the cause remanded to the circuit court for sentence.

NORTH, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.